COMMONWEALTH vs. ONE 2004 AUDI SEDAN AUTOMOBILE
& others.[1]

No. 07-P-1408.

Norfolk. May 6, 2008. - December 16, 2008.

Present: BERRY, SMITH, & RUBIN, JJ.

Further appellate review granted, 453 Mass. 1104 (2009).

*Forfeiture Proceeding. Motor Vehicle,* Forfeiture. *Practice, Civil,* Forfeiture
proceeding.

This court concluded that in a civil action for forfeiture, the Commonwealth
need not demonstrate in its complaint the existence of probable cause to
institute the action, but rather, the showing of probable cause is its burden
at the trial on the complaint. [316-318] RUBIN, J., concurring in the judgment.
In a civil action for forfeiture, the Commonwealth pleaded sufficient facts in
its complaint and accompanying affidavits to state a cause of action pursu-
ant to G. L. c. 94C, § 47(*a*)(5), where it alleged facts giving rise to the
inference that funds in the relevant bank account were probably derived
from illegal drug transactions. [318-321] RUBIN, J., concurring in the
judgment.

CIVIL ACTION commenced in the Superior Court Department on
February 24, 2007.

A motion to dismiss was heard by *Kenneth J. Fishman,* J.

An application for leave to file an interlocutory appeal was
allowed by *Lenk,* J.

*Susanne M. O'Neil,* Special Assistant District Attorney, for
the Commonwealth.

*Edward H. Sharkansky* (*Dana Alan Curhan* with him) for the
intervener.

SMITH, J. On February 24, 2006, the Commonwealth filed a
civil complaint for forfeiture, pursuant to G. L. c. 94C, § 47(*a*)(3)
& (5) and (*d*), of property belonging to Bruce Kneller. Specif-
ically, the Commonwealth sought forfeiture of a 2004 Audi

---

[1]Four thousand three hundred fifty dollars in United States currency and
$226,511.92 in a Bank of America account; Bruce Kneller, intervener.

Sedan automobile, $4,350 in United States currency, and $226,511.92 in a local Bank of America account, all allegedly related to Kneller's illegal Internet steroid distribution operation. The Commonwealth's ex parte motion for a preliminary order of custody was allowed on February 27, 2006. Kneller, without objection, moved to intervene on March 17, 2006; the court allowed the motion on March 21, 2006.

On February 14, 2007, Kneller filed a motion pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), to dismiss the complaint as to the funds in the Bank of America account. In his motion, Kneller claimed that the forfeiture complaint and the accompanying affidavits did not demonstrate the existence of probable cause to institute the action as required by G. L. c. 94C, § 47(d). After argument, a Superior Court judge allowed the motion, ruling that "the complaint and supporting affidavits fail to aver sufficient facts to support a nexus between the funds in the bank account and Kneller's illegal drug activity, and thus fail to meet the probable cause standard."

The Commonwealth petitioned a single justice pursuant to G. L. c. 231, § 118, seeking leave to file an interlocutory appeal. On June 20, 2007, the single justice allowed the interlocutory appeal and stayed the proceedings below.

On appeal, the Commonwealth claims that the motion judge committed error in requiring the Commonwealth to establish probable cause at the complaint stage.[2]

*Facts.* The Commonwealth's complaint incorporated State Trooper Timothy Curtin's affidavit in support of forfeiture, detailing the specifics of the investigation into Kneller's illegal steroid sales.[3] We summarize the facts alleged in the complaint and accompanying affidavits.

---

[2]Kneller contends that because the Commonwealth argued before the motion judge in the Superior Court only that the complaint did indeed show probable cause, the Commonwealth effectively conceded below that it had the burden of showing probable cause at the time it filed the complaint and thus waived its right to appeal that issue. However, a fair reading of the Commonwealth's opposition to Kneller's motion to dismiss shows that, although the Commonwealth argued that it had probable cause, it also argued that it did not have to prove it until the forfeiture trial. Therefore, the Commonwealth did not waive its appeal.

[3]Attached to Curtin's affidavit was his prior affidavit in support of a search warrant for the Bank of America account and the affidavit of State Trooper

In October, 2005, acting on information from an informant, Drug Enforcement Special Agent Kevin Tidwell, working undercover in California, sent an electronic mail message (e-mail) to a particular e-mail address, requesting a price list for available steroids. In return, he received a price list and instructions to send his order to another e-mail address.[4] After the initial investigation, Tidwell obtained a search warrant for the two e-mail addresses and discovered a third e-mail address associated with the operation that was registered to Kneller, a former registered nurse and body builder, in Randolph.

Further investigation of the e-mail accounts revealed that Kneller and a partner, Gary Somerville, operated Red Star Laboratories (Red Star), selling illegal anabolic steroids. Red Star's e-mail advertisements assured customers that it sold only quality products and that it had "fulfilled 15,000 orders over seven years of doing business and had never had one package intercepted." Individuals interested in purchasing illegal steroids from Red Star sent e-mails to Somerville, and, in turn, Somerville instructed buyers to send foil-wrapped cash to one of six locations in Redondo Beach, California. Somerville then e-mailed the order to Kneller, who shipped the steroids to the buyer. Somerville mailed Kneller's profits to a postal box in Randolph.

On October 14, 2005, Kneller participated in a live, online interview at www.bodybuilding.com, appearing with the president of Gaspari Nutrition, Inc. During the interview, Kneller admitted that he manufactured performance-enhancing drugs and frequently traveled to China to inspect the quality of his ingredients.

---

Mark Kiley in support of the application for a warrant to search Kneller's residence. The search warrants issued for both the bank account and Kneller's residence.

[4] The prices quoted were: "1) Winstrol 25 Capsules, 25mg stanozolol x 100 count per bottle — $75 each or 8 bottles for $480; 2) Anadrol 50 Procaps, Oxymetholone 50mg x 100 count per bottle — $75 each or 8 for $480; 3) Anavar 10, Oxanodrolone 10mg capsules x 60 count per bottle — $75; 4) Cialis 25mg capsules x 100 count per bottle — $75 each; 5) Dianabol (methandrostenelone) 10mg caps in bottles of 200 caps — $75 each or 6 for $360; 6) Red Star of China Masteron 200mg — Sold Out; 7) Red Star of China Equipoise 200mg . . . 200mg/ml x 30ml per bottle — $75 each or 6 for $360; 8) Red Star of China Polysteron — $75 per 30ml vial. Also $25 shipping and handling per order."

Also in October, 2005, Tidwell conducted a controlled purchase of steroids from Somerville and Kneller. Tidwell sent his payment as instructed and received a package of steroids with a false return address. United States Postal Service inspectors learned that the package had been mailed from the Randolph post office, and a postal clerk identified Kneller as the sender. Kneller mailed twelve other packages on the same day.

On November 10, 2005, the same Randolph postal clerk who had earlier identified Kneller informed Postal Service inspectors that Kneller had just mailed another twelve parcels, all bearing fictitious return addresses. The packages were addressed to different individuals in ten different States. The parcels were not delayed and were delivered on time.

Investigators initiated a second controlled purchase in December, 2005. In this instance, the package was tracked via FedEx. After the package was delivered, investigators observed, on a security camera, Kneller shipping the parcel, along with several other packages, from a FedEx store in Braintree.

In November, 2005, and February, 2006, Kneller received a total of four FedEx packages addressed to "Bruce Kneller, Therachem, 141 Memorial Parkway, PMB 245, Randolph MA 02368," at a Postal Center USA store in Randolph. No record of a Massachusetts company with the name Therachem exists. The parcels, weighing between thirteen and forty pounds, were sent from Kansas City, Missouri, by Voigt Global Distribution LLC. Voigt Global Distribution LLC is known to sell chemicals, pharmaceutical packaging, laboratory equipment, and biochemicals. Investigators concluded that Kneller received his steroid packaging supplies from Voigt Global Distribution LLC.

On February 14, 2006, United States postal inspectors intercepted fifteen packages, suspected to contain steroids, being shipped by Kneller to various locations throughout the United States, all with false return addresses. On February 16, 2006, postal inspectors executed Federal search warrants and discovered that the packages contained various types of controlled substances, all labeled as manufactured by "Red Star Laboratories." In total, over 5,300 capsules of anabolic steroids, 1,000 capsules of Cialis (a prescription erectile dysfunction drug), and forty-eight bottles of liquid anabolic steroids were recovered.

The following day, the State police sought and obtained a search warrant for Kneller's residence in Canton. While executing a search pursuant to the warrant, officers recovered 1,664 white, sealed bottles containing a white powdery substance, some of which were marked as Dianabol, Winstrol, and Anavar, along with labeling, pricing, and packing material bearing the name Red Star Laboratories. According to Red Star's price list, the retail value of the drugs was over $124,800. Officers recovered $4,359 in United States currency, some Chinese currency, seven handguns, two rifles, a shot gun, and mailing receipts from the United States Post Office and Federal Express. Kneller readily admitted the steroids belonged to him.

In addition, officers seized several Bank of America deposit slip receipts from Kneller's residence. One receipt indicated that on October 31, 2005, a $55,000 deposit was made into an account with a balance of $83,113.87. A second receipt showed that on January 23, 2006, a deposit of $60,000 was made into the same account, with a balance of $127,197. Officers also seized a blank Bank of America check in the name of Bruce Kneller, 29 Birch Drive, Randolph, MA 02368, with the same account number. A Bank of America automatic teller machine (ATM) receipt for a Bank of America ATM card that showed several thousand dollars worth of transactions from January through February, 2006, was also seized.

On February 18, 2006, officers froze Kneller's Bank of America checking account, which had a current balance of $226,511.92. Pursuant to a Norfolk County grand jury summons, officers learned that in the period from December 15, 2005, to February 15, 2006, Kneller's account had a beginning balance of $147,806.92 and an ending balance of $226,511.92. Over this two-month period, Kneller made seven outgoing wire transfers to locations outside the United States, including China, totaling $275,314. He received three incoming wire transfers totaling $373,500. The last incoming wire transfer took place on February 14, 2006, in the amount of $215,500, originating from "Gaspari Nutrition Inc."

Trooper Curtin stated in his affidavit, which was incorporated by reference into the Commonwealth's complaint, that he was familiar with the methods, routines, and practices of drug traf-

fickers as a result of his involvement in numerous narcotics investigations. His experience included field and undercover operations, applying for and executing search warrants, and extensive education on the use and distribution of narcotics. According to Curtin, drug dealers often need large amounts of cash readily available and often hide it in various locations. He explained that dealers attempt to launder their cash through legitimate business operations in order to deposit the money in banks while keeping its origins hidden.[5]

Curtin concluded that the funds in Kneller's Bank of America account were subject to forfeiture pursuant to G. L. c. 94C, based on

> "the investigation of Bruce Kneller; his access to, and possession for sale of . . . large quantities of [steroids]; Kneller's statements to officers that these [steroids] belonged to him; his familiarity with prices, weights, quantity and quality of [steroids]; his possession of [guns] . . . and papers with notes and ledgers used by drug dealers to track their transactions; and the possession of a large amount of cash at his house; his apparent lack of legitimate income; and based on common sense."

*Discussion.* Our inquiry into this matter is twofold. First, we must determine whether the motion judge committed error in ruling that the Commonwealth must present sufficient evidence within its pleadings to demonstrate the existence of probable cause at the complaint stage, and, second, if the Commonwealth does not have to establish probable cause in its complaint, the applicable burden of proof at the pleading stage. These inquiries appear to be a matter of first impression in the Commonwealth.

As first enacted in 1971, G. L. c. 94C, § 47, inserted by St. 1971, c. 1071, § 1, required the Commonwealth to prove its case by a preponderance of the evidence. However, the Federal statute in effect at that time required probable cause as the government's burden of proof. In 1989, the Legislature, by St.

---

[5]In his affidavit in support of the search warrant, Trooper Kiley provided similar information about drug traffickers' use of cash and money laundering to hide assets based on his own training and experience as a narcotics investigator.

1989, c. 653, § 79, amended G. L. c. 94C, § 47, and made it more similar to the Federal statute then in effect, 21 U.S.C. § 891 (1988) (amended 2000 [see note 7, *infra*]). Relevant to our inquiry, the Legislature changed the Commonwealth's burden of proof to probable cause. General Laws c. 94C, § 47(*d*), as appearing in St. 1989, c. 653, § 79, now provides in relevant part:

> "In all such suits where the property is claimed by any person, other than the Commonwealth, the Commonwealth shall have the burden of proving to the court the existence of probable cause to institute the action, and any such claimant shall then have the burden of proving that the property is not forfeitable . . . ."

Kneller argues that the Legislature intended to place the burden of establishing probable cause at the commencement of the action, with the filing of the petition or complaint, and points to the words "probable cause to institute the action" in support of his argument.

The Supreme Judicial Court has looked to the Federal decisions for guidance in interpreting the Massachusetts forfeiture statute. See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 8 (1995); *Commonwealth* v. *Brown*, 426 Mass. 475, 478 (1998).

Federal decisions interpreting the parallel Federal statutes have ruled that a forfeiture complaint does not have to demonstrate probable cause at the complaint stage. See *United States* v. *Banco Cafetero Panama*, 797 F.2d 1154, 1162 (2d Cir. 1986) ("Under the drug forfeiture statute, the Government may seize property upon the filing of a complaint and need not demonstrate probable cause until the forfeiture trial"). See also *United States* v. *Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993), cert. denied, 510 U.S. 1191, and cert. denied, 510 U.S. 1192, and cert. denied, 511 U.S. 1030 ("The complaint does not have to meet the ultimate trial burden of showing probable cause for forfeiture; it simply needs to establish a 'reasonable belief that the government can show probable cause for forfeiture at trial' "); *United States* v. *Two Parcels of Real Property*, 92 F.3d 1123, 1127 (11th Cir. 1996).[6]

---

[6]The cases cited by Kneller suggesting a circuit split on the issue are

Further, two Supreme Judicial Court decisions, although not directly on point, are helpful to our analysis. In *Commonwealth v. Fourteen Thousand Two Hundred Dollars*, 421 Mass. at 4-5, 8-9, the claimant contended that the Commonwealth had not met its burden of proving probable cause at the forfeiture trial because it relied on hearsay evidence. The court held that the Commonwealth had met its burden *at trial*, *id.* at 9, reasoning that the Commonwealth must "only show a 'reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion' " in order to shift the burden to the claimant to prove that the property is not forfeitable under the statute. *Id.* at 8, quoting from *United States v. $250,000 in U.S. Currency*, 808 F.2d 895, 897 (1st Cir. 1987). The conclusion that the word "institute" in the statute refers to the Commonwealth's burden at the forfeiture trial is further supported by the court's conclusion "that the Commonwealth's evidence [at trial] was sufficient to warrant the judge's determination that probable cause existed to *institute* the forfeiture proceeding" (emphasis added). *Commonwealth v. Fourteen Thousand Two Hundred Dollars*, 421 Mass. at 9. See also *Commonwealth v. Brown*, 426 Mass. at 476-478 (discussing the Commonwealth's initial burden of proving probable cause when "commenc[ing]" a forfeiture proceeding).

Therefore, for the reasons stated above, we hold that the Commonwealth need not demonstrate in its forfeiture complaint the existence of probable cause, but rather, the showing of probable cause is its burden at the trial on the complaint.

Our inquiry does not stop here because we must still resolve the question what the Commonwealth must show at the pleading stage.

The pre-CAFRA Federal decisions[7] interpreting the analogous Federal forfeiture statute are not instructive on this point because

---

unpersuasive. In *United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1289 (9th Cir. 1997), the court simply considered "the scope of evidence that can be considered when making probable cause determinations" at the *forfeiture hearing* and held that the government may not rely on evidence acquired after the forfeiture complaint was filed. The other cases similarly address the nature of the burden and the evidence that may be presented at the forfeiture trial.

[7]In the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. §§ 981, 983 (2000), Congress increased the government's burden of proof to

21 U.S.C. § 881(b) (1988) (amended 2000), stated that civil forfeiture proceedings were governed by the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Claims, specifically, Federal Supplemental Rule E(2)(a).[8] Federal Supplemental Rule E(2)(a) is more stringent than normal pleading requirements and mandates that a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Claims Rule E(2)(a) (1987). Federal decisions have therefore held that the government must allege specific facts to support a reasonable belief that the government can demonstrate probable cause at trial that the property is forfeitable to meet the requirements of Supplemental Rule E. See *United States* v. *$39,000 in Canadian Currency*, 801 F.2d at 1216; *United States* v. *One Parcel of Real Property*, 921 F.2d 370, 375-376 (1st Cir. 1990); *United States* v. *Daccarett*, 6 F.3d at 47.

Massachusetts does not have an analogous rule to Federal Supplemental Rule E. Because a forfeiture proceeding is a civil proceeding, Massachusetts cases have relied upon the Massachusetts Rules of Civil Procedure to govern forfeiture actions. See *Commonwealth* v. *Nine Hundred & Ninety-Two Dollars*, 383 Mass. 764, 775-776 (1981) (applying civil discovery rules because proceeding a "civil suit in equity"); *Commonwealth* v. *One 1987 Mercury Cougar Automobile*, 413 Mass. 534, 536

---

prove forfeiture from probable cause to a preponderance of the evidence. There has been no corresponding amendment of G. L. c. 94C, § 47, and therefore we only look to the pre-CAFRA cases for guidance.

[8]Title 21 U.S.C. § 881(b)(1988) (amended 2000) provided that "[a]ny property subject to civil or criminal forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims . . . ." 21 U.S.C. § 881(b)(1988) (amended 2000). "The Supplemental Rules are part of the Federal Rules of Civil Procedure . . . and apply to actions *in rem*, . . . such as civil forfeitures." *United States* v. *$39,000 in Canadian Currency*, 801 F.2d 1210, 1215-1216 (10th Cir. 1986).

The Federal Supplemental Rules were amended in 2006 and forfeiture petitions are now governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Claims Rule G (2006).

(1992) (applying Mass.R.Civ.P. 56, 365 Mass. 824 [1974]); *Commonwealth* v. *Brown,* 426 Mass. at 480 (applying Mass. R.Civ.P. 6, 365 Mass. 747 [1974]).

Here, Kneller's motion to dismiss the complaint was brought pursuant to Mass.R.Civ.P. 12(b)(6), for "[f]ailure to state a claim upon which relief can be granted." "A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint . . . ." Reporters' Notes to Mass.R.Civ.P. 12. Rule 8(a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 749 (1974), requires that complaints "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." The question of a pleading's sufficiency pursuant to the Massachusetts Rules of Civil Procedure turns on whether the complaint provides enough information to give the defendant notice of what the dispute is about and asserts a right to recovery cognizable on some acceptable legal theory. *Eagle Fund, Ltd.* v. *Sarkans,* 63 Mass. App. Ct. 79, 83 n.8 (2005). "A complaint is sufficient 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Blank* v. *Chelmsford Ob/Gyn., P.C.,* 420 Mass. 404, 407 (1995), quoting from *Nader* v *Citron,* 372 Mass. 96, 98 (1977). Therefore, "we examine the sufficiency of the [Commonwealth's] claims in light of the principles that the allegations of the complaint, as well as such inferences as may be drawn therefrom in the [Commonwealth's] favor, are to be taken as true." *Blank* v. *Chelmsford Ob/Gyn, P.C., supra.*

A review of the complaint with its accompanying affidavits demonstrates that the Commonwealth pleaded sufficient facts to state a cause of action for a claim of forfeiture pursuant to G. L. c. 94C, § 47(*a*)(5). Taken as true with all reasonable inferences drawn in the Commonwealth's favor, the allegations state a claim that the money in the Bank of America account was money exchanged for or intended to be exchanged for illegal steroids, proceeds traceable to the sale of illegal steroids, or money used to or intended to be used to facilitate the manufacture and sale of illegal steroids. The Commonwealth was not required to allege facts showing that the sum seized was linked to one particular drug transaction or transactions; it was only required to allege

facts giving rise to the inference that "the money was probably derived from illegal drug transactions." *Commonwealth* v. *Brown*, 426 Mass. at 479. The facts alleged here were sufficient to meet that standard.

The order of the Superior Court is vacated, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

RUBIN, J. (concurring). In *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 8 (1995), the Supreme Judicial Court said that the language we construe today that was added in the 1989 amendments to G. L. c. 94C, § 47(*d*), "virtually mirrors the [then extant] Federal statutes and was enacted after those statutes were construed and applied by the Federal courts. It is reasonable to think that the Legislature revised § 47(*d*), to achieve the result reached by the Federal statutes as construed by the Federal Courts." At the time the Legislature enacted the 1989 amendments, the United States Court of Appeals for the Second Circuit had construed the parallel Federal provision to mean that the "Government . . . need not demonstrate probable cause until the forfeiture trial." *United States* v. *Banco Cafetero Panama*, 797 F.2d 1154, 1162 (2d Cir. 1986). Consequently, I agree that the statute must be construed to create a burden-shifting mechanism for trial, under which the Commonwealth must provide at trial its evidence of probable cause, after which the burden will shift to the defendant to prove that his or her property should not be forfeited.

I write separately, however, to observe that in this case we apply the interpretive rule articulated by the Supreme Judicial Court in *Fourteen Thousand Two Hundred Dollars* in a circumstance that court may not have envisioned, and that this case might, therefore, present an appropriate opportunity for it to consider whether that rule warrants qualification or limitation.

In *Fourteen Thousand Two Hundred Dollars*, the court had before it a question — the exact burden of proof imposed on the government — that had been addressed unanimously by several United States Courts of Appeals construing the parallel

Federal statute prior to the Legislature's adoption of G. L. c. 94C, § 47(*d*). In that context, the legislative language had a relatively well-settled Federal gloss. Here, by contrast, at the time of the adoption of the statute, only a single United States Court of Appeals had spoken on the question that we must decide today, the Second Circuit in the *Banco Cafetero Panama* case. Further, in *Fourteen Thousand Two Hundred Dollars*, the Supreme Judicial Court concluded that the widely adopted Federal interpretation made sense. See 421 Mass. at 9 (determining that the burden of proof imposed under the Federal decisions is "appropriate"). Here, by contrast, the Second Circuit's construction is contrary to the apparent meaning of the language of the statute.

The apparent meaning of that language is that probable cause must be shown in the complaint and its accompanying affidavits such that it may be tested by a motion to dismiss. This reading comports not only with the language of the statute, but, in allowing a seizure of property to be tested at the earliest juncture, with the constitutional status of an individual's private property. Further, compliance with this reading would impose virtually no burden on the Commonwealth.

General Laws c. 94C, § 47(*d*), as appearing in St. 1989, c. 653, § 79, provides that in a civil forfeiture case such as this "the Commonwealth shall have the burden of proving to the court the existence of probable cause to institute the action, and any such claimant shall then have the burden of proving that the property is not forfeitable . . . ." Burden-shifting statutes that set out the burdens at trial ordinarily focus on the showing to be made at trial. See, e.g., G. L. c. 151B, § 4(1A), inserted by St. 1973, c. 929 ("The employee shall have the burden of proof as to the required practice of his creed or religion. . . . The employer shall have the burden of proof to show undue hardship"). The statute before us, by contrast, asks about the evidence not at trial, but at the moment the complaint is filed: one "institutes" a civil action by bringing a complaint. See, e.g., G. L. c. 149, § 150, as appearing in St. 2008, c. 80, § 5 (imposing a deadline for "institut[ing]" a civil action).

It is difficult to see what purpose is served by asking at the time of trial whether the government had sufficient evidence to demonstrate probable cause at the point in the past when the

complaint issued, nor why the Commonwealth should be disabled from meeting its trial burden with whatever additional evidence it developed between the time the suit is instituted and the time of trial. These difficulties would be averted if the statute were read to mean what its plain language suggests, that the Commonwealth is required to show at the time the complaint is brought at the outset of the litigation that it has "probable cause to institute the action."

This reading would also make sense in light of the interest involved in a seizure of private property in a civil forfeiture proceeding. Property, like life and liberty, is a value of constitutional dimension. See, e.g., the Fourteenth Amendment to the United States Constitution; arts. 10, 11, 14, 15, 29 of the Massachusetts Declaration of Rights; *Austin* v. *United States*, 509 U.S. 602, 621-622 (1993) (civil forfeiture is "punishment" that implicates the Eighth Amendment's excessive fines clause). If the statute were read to describe what must be shown when the suit is instituted, it would implement a procedure for contesting seizures of private property that is somewhat analogous to the procedure employed when individuals are seized. Much as an individual who has been arrested is entitled to a reasonably prompt hearing on his or her continued detention, this reading of the statute would give the owner of property an early opportunity to contest in an adversary proceeding on a motion to dismiss whether there is probable cause for the seizure of his or her property. Reading the statute to address trial burdens gives the Commonwealth the power to hold an individual's property for as long as it takes for trial to commence, without any adversary hearing during the intervening time even about whether there was probable cause for the seizure in the first place.[1]

Nor would the reading indicated by the statutory language

---

[1]Under the special rules of procedure that were applicable under the parallel (now amended) Federal statute, 21 U.S.C. § 881(b) (1988) (amended 2000), a complaint is sufficient only if it states "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rules of Admiralty and Maritime Claims Rule E(2)(a). By contrast, as the majority notes, if our statute is read as only setting out a mechanism for shifting the burden at trial, the ordinary notice-pleading rule, Mass.R.Civ.P.8(a), 365 Mass. 749 (1974), will apply.

impose any substantial burden on the Commonwealth. On February 18, 2006, before the commencement of this action, the Commonwealth obtained a search warrant that stated: "All assets contained in [the bank account at issue] . . . are to be 'frozen' by Bank of America . . . until further Order of the Court." In the ex parte proceeding that led to that order, the Commonwealth was required to demonstrate, and the District Court found, that there was probable cause that the assets in the account were unlawfully possessed or concealed for an unlawful purpose and were evidence of a crime or of criminal activity. All that the Commonwealth would be required to do to put its case for probable cause before the court at the pleading stage would be to include in the complaint and its attached affidavits the information already put forward at the time that order was sought. This would amount essentially to a clerical task.[2]

In light of the differences between this case and *Fourteen Thousand Two Hundred Dollars*, it might make sense here to utilize the usual rule of interpretation we apply when construing Massachusetts statutes that parallel provisions of Federal statutory law, rather than the rule articulated in *Fourteen Thousand Two Hundred Dollars*. Ordinarily, we look to cases construing the Federal provisions only for guidance, giving them persuasive authority, but not holding them ultimately to control where they are contrary to the language of the State statute. See, e.g., *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 163 (1987). In the face of the language of the statute and the considerations I have described, if we were applying that usual rule, *Banco Cafetero Panama* (and the subsequent Federal cases described by the majority) would not deserve controlling weight.[3]

The decision to qualify or limit the rule of construction announced in *Fourteen Thousand Two Hundred Dollars* is, how-

---

[2]In this case, the Commonwealth does not argue before us that the complaint and its attached affidavits demonstrated probable cause to institute the action.

[3]As the majority notes, the portion of *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. at 8-9, that construes the statute before us is not directly on point. It deals only with the quantum of the Commonwealth's burden, analogizing it to the burdens imposed in criminal proceedings at both the indictment and the probable cause hearing stages of the criminal process. See *Commonwealth* v. *Brown*, 426 Mass. 475, 476-478 (1998).

ever, one not for us but for the Supreme Judicial Court. In the absence of any such qualification or limitation, the statute must be read to impose upon the Commonwealth the burden to demonstrate probable cause not in the complaint but at trial. Consequently, I agree that the judgment must be vacated and the case remanded to the Superior Court for further proceedings.