WESLEY S. BLANK *vs.* CHELMSFORD OB/GYN, P.C., & others.[1]

Middlesex. February 8, 1995. - May 17, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil*, Motion to dismiss. *Contract*, Implied covenant of good faith and fair dealing, Employment, Performance and breach. *Corporation*, Close corporation, Stockholder, Stock. *Fiduciary*. *Employment*, Termination.

Discussion of the implied covenant of good faith and fair dealing between parties to an employment contract and the fiduciary duty of good faith and loyalty among stockholders in a close corporation. [407-408]

In an action brought by a former employee and shareholder of a close corporation alleging breach of contract, breach of fiduciary duty, intentional infliction of emotional distress and violation of G. L. c. 93A, all arising out of the termination of the plaintiff's employment, the judge correctly dismissed the complaint under Mass. R. Civ. P. 12 (b) (6), where the plaintiff had been terminated without cause on proper notice in accordance with the written terms of the employment contract that the plaintiff had agreed to. [408-409]

CIVIL ACTION commenced in the Superior Court Department on March 16, 1994.

The case was heard by *Patrick F. Brady*, J., on a motion to dismiss.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael J. Stone* for the plaintiff.

*Joan O. Vorster* for the defendants.

LYNCH, J. The individual defendants, two of the three shareholders in a close corporation, terminated the employment of the plaintiff, the third shareholder, pursuant to an

---

[1]Edward M. Lipman and David W. Merens.

employment agreement. As a result of this termination, the plaintiff filed this action alleging that the individual defendants were liable on theories of breach of contract, breach of fiduciary duty, conspiracy, intentional infliction of emotional distress, and unfair and deceptive trade acts in violation of G. L. c. 93A (1992 ed.). The plaintiff also alleged that the defendant corporation was liable on theories of breach of contract, deceit, wrongful termination, intentional infliction of emotional distress, and unfair and deceptive trade acts in violation of G. L. c. 93A. The plaintiff sought treble damages and attorney's fees pursuant to G. L. c. 93A, as well as injunctive relief to prevent his termination.

The defendants moved to dismiss the plaintiff's complaint, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim on which relief can be granted. A Superior Court judge allowed the defendants' motion, ruling that the defendants acted within their contractual rights under the employment contract and stock purchase agreement. The judge rejected the plaintiff's argument that the defendants owed the plaintiff a duty of good faith and fair dealing. The plaintiff filed a timely notice of appeal. We granted the plaintiff's application for direct appellate review. We affirm the judgment.

In 1988, the plaintiff and the individual defendants created the defendant corporation for the purpose of conducting a group medical practice devoted to obstetrics and gynecology.[2] In 1990, the plaintiff entered into a written employment contract with the corporation. The contract defined the period of employment as follows:

"2. *Employment Period.* The Corporation hereby hires the Employee to render services for it from the date set forth above to December 31, 1990 and continuing thereafter from year to year until either party shall have given written notice to the other that he (it) wishes to terminate the contract. Such notice shall be effective to terminate this Contract on

[2]A fourth doctor was also one of the founders of the corporate defendant, but subsequently left the practice and is not a party to this litigation.

the last day of the sixth month following the month in which notice was given. This contract may also be terminated as hereinafter provided."

The contract also contained a termination provision which stated as follows:

"10. *Termination of Agreement.* This Agreement shall terminate upon the disability (as provided in Section 9 hereof), retirement (as provided in Section 11 hereof), entrance into military service or death of the Employee, upon the disqualification of the Employee from the practice of medicine for any reason or upon the discontinuation of the Employee's policy of insurance insuring the Employee against acts of malpractice and negligence, or until terminated by either party upon serving proper written notice as hereinabove provided.

"Upon termination, the Employee shall be paid his salary earned to and including the date of termination and his salary for vacation days earned but not yet taken to the date of termination."

The parties also entered into a stock purchase agreement which provided that, in certain circumstances, the corporation would repurchase a shareholder's stock at the book value of each share, as determined by the independent accountant of the corporation. According to this Agreement, the obligation of the shareholder to sell and of the corporation to purchase the shares accrues on certain circumstances, including "[u]pon the termination by the Shareholder or by the Corporation of the employment of the Shareholder by the Corporation for any reason whatsoever."

On Friday, January 28, 1994, sometime after 5 P.M., the defendant, Edward M. Lipman, president of the corporation (president), delivered to the plaintiff a written notice stating that there would be a special meeting of the board of directors of the corporation on the following Monday, January 31, 1994. The notice stated that the purpose of the meeting was to consider the termination of the plaintiff's employment and the repurchase of the plaintiff's stock. At the board of director's meeting the president gave the plaintiff a notice, which

had been signed by the president on behalf of the corporation, stating that the plaintiff's employment was being terminated. The notice was effective as of January 31, 1994, and stated, "this notice shall effectively terminate the agreement on July 30, 1994." The defendants also voted to remove the plaintiff as the corporate treasurer and clerk. Additionally, pursuant to the stock purchase agreement, the plaintiff was required to sell back his shares to the corporation at their book value. The plaintiff objected to his termination and the required repurchase of his stock.

In evaluating the allowance of a motion to dismiss, we are guided by the principle that a complaint is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, we examine the sufficiency of the plaintiff's claims in light of the principles that the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true. *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 429 (1991), citing *Balsavich* v. *Local 170, Int'l Bhd. of Teamsters*, 371 Mass. 283, 287 (1976), and *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976).

This case places in stark contrast certain generally accepted principles of contract and corporate law. First, there is an implied covenant of good faith and fair dealing between parties to a contract. *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 (1991). Such a covenant requires "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* at 471-472, quoting *Druker, supra,* and *Uproar Co.* v. *National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936). It is clear that an employment contract contains this implied covenant of good faith and fair dealing, and a termination not made in good faith may constitute a breach of the

contract. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101 (1977).

Second, the relationship among stockholders in a close corporation must be one of trust, confidence, and absolute loyalty if the enterprise is to succeed. In this regard, a close corporation resembles a partnership. *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 587 (1975). Because of this relationship, stockholders in a close corporation owe one another the same fiduciary duty in the operation of the corporation that partners owe to one another. This fiduciary duty is one of the utmost good faith and loyalty. *Id.* at 593. Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency, or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation. However, questions of good faith and loyalty with respect to rights on termination or stock purchase do not arise when all the stockholders in advance enter into agreements concerning termination of employment and for the purchase of stock of a withdrawing or a deceased stockholder. See *id.* at 598 n.24; *Evangelista* v. *Holland*, 27 Mass. App. Ct. 244, 248-249 (1989).

Third, the fact that a stockholder has entered into an employment agreement or the fact that stockholders execute a valid stock purchase agreement does not relieve stockholders of the high fiduciary duty owed to one another in all their mutual dealings. See *King* v. *Driscoll*, 418 Mass. 576, 586 (1994). In this case, however, in contrast to *King*, there was an employment contract that permitted employment to be terminated by either party on six-months' notice, and there is no allegation that the defendants are denying the plaintiff his contractual rights or future compensation for past services.

Because there is a stock purchase agreement, the method of determining the value of the plaintiff's shares on proper termination is not subject to question. A duty of good faith and fair dealing exists during the course of events leading up to and including termination, but that duty is to be evaluated

in light of an agreement that permits termination by either party without cause on notice.

Thus, we are faced with a termination without cause on proper notice, in accordance with the plaintiff's employment contract freely and mutually agreed to at the outset of his employment. The plaintiff received all that he had bargained for, i.e., the book value of his stock and six-months' notice of his termination.

*Judgment affirmed.*