BARRY, Circuit Judge,
dissenting.
The Majority concludes as follows: Dr. Jang’s claim that BSC breached § 7.3(c) of *369 the Agreement because the cash offset qualifies as a “recovery of damages,” and his claim that BSC violated the covenant of good faith and fair dealing implicit in that Agreement by structuring a settlement to thwart the purpose of § 7.3(c), were “sufficiently colorable” to survive judgment on the pleadings. Maj. Op. at 368. It, thus, reverses the judgment, and remands for further proceedings. Because I believe § 7.3(e), the concededly key provision in this case, to be decidedly unambiguous, I respectfully dissent.
Section 7.3(c) requires BSC to pay Dr. Jang from the “balance, if any” from “any recovery of damages” received in a covered infringement suit against a third party. As the Majority concedes, the “any recovery of damages” language “plainly” refers to monetary recoveries only. Id. at 365. What it found to be ambiguous, however, was whether the cash offset here was a monetary recovery qualifying as a “recovery of damages” within the meaning of § 7.3(c). It unambiguously was not.
Under § 7.3(c), there can only be an additional earn out to Dr. Jang from the “balance,” after expenses, of the “recovery amount,” i.e. the net monetary payment, that BSC received from the “suit or settlement” of a covered infringement claim. BSC did not “recei[ve]” a net monetary payment in settlement of the Cordis litigation so there was no “balance” from which to calculate an additional earn out. That Dr. Jang may not have contemplated offsetting claims or non-monetary settlements, or have considered the possibility that broader terms—“benefit,” “consideration,” e.g.—might be necessary for a non-monetary recovery to be swept in, does not render § 7.3(c) ambiguous or require us to rewrite it in his favor. Under the unambiguous language of § 7.3(c), the earn-out provision was not triggered, and judgment was properly entered in favor of BSC on the breach of contract claim.
With respect to the claim for violation of the implied covenant, there is nothing in this record suggesting that Dr. Jang, in fact, understood or expected, or even could have understood or expected, that BSC was obligated to structure all settlements to provide for a monetary recovery; indeed, the Majority found even the allegations of the complaint to be only “minimally sufficient.” Id. at 366. Moreover, any suggestion that Dr. Jang understood or expected that BSC had any such obligation would be belied by § 7.3(b), which states that “[BSC] shall have the right, but not the obligation, to institute, prosecute and control legal proceedings to prevent or restrain [third-party] infringement” (emphasis added), a provision that gives BSC broad, unqualified discretion to bring suit and make all decisions regarding suit, including the resolution of that suit. It is not for us to add limits to BSC’s authority and thereby enable Dr. Jang to achieve collaterally what he neglected to achieve contractually. See Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 441 Mass. 376, 805 N.E.2d 957, 964 (2004).
Finally, I note that, although the Majority has discerned a “material fact” or two in dispute as to the purpose of § 7.3(c) and the reasonableness of Dr. Jang’s expectations, it nonetheless cites and does not question what the Massachusetts Supreme Judicial Court has decided: where the Court has “found an implied-covenant claim to be precluded as a matter of law, the plaintiffs expectations were ‘flatly inconsistent with the plain language’ of the contract.” Maj. Op. at 366 (quoting Merriam v. Demoulas Super Markets, Inc., 464 Mass. 721, 985 N.E.2d 388, 396 (2013)). So, too, here—at least in my view.
*370 I would affirm the judgment of the District Court.