NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-663

JAMES J. DECOULOS

vs.

BOARD OF REGISTRATION OF HAZARDOUS WASTE SITE CLEANUP PROFESSIONALS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, James J. Decoulos, appeals from a Superior Court judgment affirming the decision of the Board of Registration of Hazardous Waste Site Cleanup Professionals (board) to suspend Decoulos's licensed site professional (LSP) license for one year.[1] After investigation and a hearing before a presiding officer from the Office of Appeals and Dispute Resolution (OADR), the board determined that Decoulos had violated the rules of professional conduct for LSPs, 309 Code

---

[1] The Commissioner of the Massachusetts Department of Environmental Protection was also named as a defendant in this action, but the claims against him were dismissed by a Superior Court judge and Decoulos does not challenge that decision on appeal.

Mass. Regs. §§ 4.00 (1999), and ordered that Decoulos's license be suspended for one year and that he complete additional continuing education credit.  On appeal, Decoulos contends that (1) the board's decision was arbitrary and capricious and (2) his constitutional rights were violated during the disciplinary proceedings against him.  We affirm.

Background.[2]  LSPs are "hazardous waste site cleanup professionals" authorized to oversee assessment and remediation of hazardous waste under G. L. c. 21E.  G. L. c. 21A, § 19C.  The board licenses and regulates LSPs under G. L. c. 21A, § 19C.  The Massachusetts Department of Environmental Protection (MassDEP) oversees site cleanups under G. L. c. 21E, and the implementing regulations known as the Massachusetts Contingency Plan (MCP), 310 Code Mass. Regs. §§ 40.0000 (2014).  The discipline imposed by the board arose from Decoulos's actions at two hazardous waste cleanup sites.

1.  Site A:  Eagle gas station, 131 Main Street, Carver.
On January 21, 2003, Eagle gas station (Eagle) hired Decoulos as

_____

[2] We recount the facts primarily as found in the board's final findings of fact and rulings of law, and the presiding officer's recommended decision, See Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm'n, 372 Mass. 152, 154 (1977) ("It is not for this court to substitute its judgment on questions of fact for that of the agency").  On appeal, Decoulos does not challenge the board's factual findings.

2

the LSP to address a light nonaqueous phase liquid (LNAPL)[3] release on the property, Site A.  Decoulos submitted his first proposal to the MassDEP to address the contamination on January 27, 2003.  On May 16, 2003, Decoulos discovered a sheen indicating diesel contamination on South Meadow Brook where it passes under Main Street and notified the MassDEP.

From March 2003 to May 2005, Decoulos and the MassDEP exchanged proposals on how to address the contamination and determine its source.  The MassDEP repeatedly approved proposals for an active LNAPL recovery system, but Decoulos only used a passive LNAPL recovery system and proposed further passive methods.  Decoulos claimed that the contamination came from stormwater surface runoff but did not address the MassDEP's requests for further information to support this claim.  The MassDEP denied several systems proposed by Decoulos to treat the brook contamination because it found Decoulos did not provide sufficient information to support his proposals and failed to investigate the possibility of a subsurface diesel leak from the gas station.  It was not until May 2005 that Decoulos first acknowledged the possibility of subsurface contamination.  After

_____

[3] Light nonaqueous phase liquid is defined as "oil and/or hazardous material that is present in the environment as a separate phase liquid" and is lighter than water.  310 Code Mass. Regs. § 40.0006.

Decoulos submitted an update to the MassDEP in July 2005, Eagle hired a different LSP.

2. Site B: Speedy Lube, 633 North Main Street, Randolph. In 1998, a prior LSP reported gasoline contamination at Site B, which had been a gas station and auto repair shop since 1935. In or around May 2002, the site owner, Speedy Lube, retained Decoulos as the LSP to respond to the contamination. After assessing the contamination on June 4, 2002, by using two rounds of groundwater sampling, Decoulos filed a response action outcome (RAO) statement, indicating that the site had achieved a level of no significant risk. The MassDEP issued a notice of noncompliance on November 6, 2003, stating that Decoulos's RAO was not valid. The MassDEP determined that Decoulos incorrectly applied the MCP and the MassDEP guidelines by using improper calculations and incorrectly applying MCP risk assessment practices. The incorrect calculations resulted in Decoulos's incorrect determination that there was "no significant risk" at the site, despite data showing increasing levels of contamination.

3. Procedural history. On December 15, 2005, the board received a complaint regarding Decoulos's work at Site A; a complaint response team reviewed Decoulos's audit history and uncovered potential violations at Site B. As a result of the investigation into both sites, the complaint response team

4

recommended a one-year suspension of Decoulos's LSP license.  In a January 8, 2010, order to show cause, the board alleged that Decoulos failed to act with reasonable care and diligence in violation of LSP professional competency standards, 309 Code Mass. Regs. § 4.02(1), and that he failed to meet the requirements of the MCP in violation of the LSP rules of professional responsibility, 309 Code Mass. Regs. § 4.03(3)(b). Decoulos filed an answer to the show cause order and requested an adjudicatory hearing.  The board delegated the hearing to a presiding officer from the OADR.  On September 7, 2012, after conducting an administrative hearing with the presentation of witnesses and evidence, the presiding officer issued a recommended decision finding that the board had proved Decoulos's violations by an "overwhelming preponderance of the evidence."  The board voted to affirm and adopt the presiding officer's recommended decision on March 20, 2014.  After Decoulos and the board attempted unsuccessfully to reach a settlement, the board issued final findings of fact and rulings of law, concluding that Decoulos had violated the LSP rules of professional conduct.  The prosecuting attorney recommended discipline of a one-year license suspension and continuing education hours.  Decoulos filed his opposition to the board's ruling and, on January 16, 2019, after hearing oral argument,

the board issued a final order imposing the disciplinary sanctions as recommended by the prosecuting attorney.

Decoulos appealed from the final order by filing a complaint in the Superior Court under G. L. c. 30A, § 14, arguing, inter alia, that his constitutional rights had been violated, the board exceeded its statutory authorization, there were clear errors of law, the board's findings were unsupported by substantial evidence, and the board's and presiding officer's actions were arbitrary and capricious. Decoulos filed a motion for judgment on the pleadings, and the board filed a cross motion. Noting the "limited and highly deferential standard of review," the Superior Court judge ordered judgment for the board. This appeal followed.

Discussion. 1. Standard of review. "We review de novo a judge's order allowing a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974)." Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 726 (2013), citing Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 600 (2010). In reviewing a Superior Court judge's ruling under G. L. c. 30A, § 14, an appellate court "conduct[s] an analysis of the same agency record, and there is no reason why the view of the Superior Court should be given any special weight." Southern Worcester County Regional Vocational Sch. Dist. v. Labor Relations Comm'n, 377 Mass. 897, 903 (1979). We

6

review the entirety of an administrative record. G. L. c. 30A, § 14 (7). See Chief Justice for Admin. & Mgt. of the Trial Court v. Commonwealth Employee Relations Bd., 79 Mass. App. Ct. 374, 380 (2011).

This court may set aside an agency decision "if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . [i]n violation of constitutional provisions; or . . . [a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7). This standard of review is highly deferential. Friends & Fishers of the Edgartown Great Pond, Inc. v. Department of Envtl. Protection, 446 Mass. 830, 836 (2006). We give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992), quoting G. L. c. 30A, § 14 (7). We also afford deference to the agency's determinations on issues of credibility and the weight of the evidence, School Comm. of Wellesley v. Labor Relations Comm'n, 376 Mass. 112, 120 (1978), and the inferences drawn therefrom. School Comm. of Brookline v. Bureau of Special Educ. Appeals, 389 Mass. 705, 716 (1983). See G. L. c. 30A, § 14.

2.  Arbitrary and capricious.[4]  During the administrative proceedings against Decoulos, the board and presiding officer made decisions that Decoulos now challenges as arbitrary and capricious under G. L. c. 30A, § 14 (7).  We cannot say that the board's decisions "lack[] any rational explanation that reasonable persons might support" (citation omitted), Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016), or that the decisions were "legally erroneous or so devoid of factual support as to be arbitrary and capricious."  MacLaurin v. Holyoke, 475 Mass. 231, 238 (2016).

First, it was not arbitrary and capricious for the presiding officer to deny Decoulos's requests to subpoena additional witnesses.  The presiding officer properly applied the governing regulations, 309 Code Mass. Regs. § 7.08 (2004).  Decoulos did not file written direct testimony as required by the regulation, nor did he show good cause to present the witness testimony by oral examination.  309 Code Mass. Regs.

_____

[4] The board contends that Decoulos waived these arguments as to why the board's decision is arbitrary and capricious because he did not raise them before the Superior Court.  He did, however, make substantially the same points in the Superior Court in arguing that the board's findings were not supported by substantial evidence.  Because "some leniency is appropriate in determining whether pro se litigants have complied with rules of procedure," Brown v. Chicopee Fire Fighters Ass'n, Local 1710, IAFF, 408 Mass. 1003, 1004 n.4 (1990), we will address the substance of his arguments notwithstanding the label he applied to them.

8

§ 7.08 ("Good cause in this context includes . . . persuasive evidence that the witness is an adverse witness, hostile, or otherwise unwilling to prepare . . . direct testimony in writing").  In addition, the presiding officer reasonably found that Decoulos failed to show that "the desired testimony is necessary and relevant and not duplicative of other witnesses' testimony."  Under G. L. c. 30A, § 11 (2), the presiding officer may "exclude unduly repetitious evidence," and under 801 Code Mass. Regs. § 1.01(8)(a) (1998), the presiding officer had discretion to make orders "which justice requires" -- including limitations on the scope of discovery.  The denial of Decoulos's request to subpoena witnesses was a rational application of the governing regulations and an appropriate exercise of discretion.[5]

Second, the board was not arbitrary and capricious in its objection to Decoulos's demands for documents from the MassDEP; neither was the presiding officer in his refusal to compel discovery.  Decoulos requested that the board produce MassDEP documents such as e-mail messages between the MassDEP employees,

_____

[5] We need not address Decoulos's contention that the denial of his requested subpoenas to four witnesses violated his rights under article 12 of the Massachusetts Declaration of Rights because this right, secured to criminal defendants, is not applicable to civil proceedings.  See Covell v. Department of Social Servs., 439 Mass. 766, 788 (2003); Adoption of Don, 435 Mass. 158, 168 (2001); Reading v. Murray, 405 Mass. 415, 418 (1989).

and the board objected.  The presiding officer denied Decoulos's request pertaining to those "documents and things that are solely within the possession, custody, or control of [the] MassDEP and not the [b]oard."  Section 1.01(8)(b) of title 801 of the Massachusetts Code of Regulations provides that a party may request documents "which are in the possession, custody, or control of the . . . [a]gency requested to provide them."  The presiding officer agreed with the board's statement that the MassDEP and the board are separate agencies with separate functions and responsibilities.  See G. L. c. 21A, §§ 7 (establishing MassDEP) and 19A (establishing the board).[6]  It was not legal error for the presiding officer to apply the discovery rules and recognize that the board is a separate agency from the MassDEP and could not be compelled to produce MassDEP documents.

Decoulos's challenge to the delay in proceedings[7] also fails.  Regardless of whether the delay in these proceedings was

---

[6] For similar reasons, the MassDEP was not a necessary and indispensable party.  The board and the MassDEP are separate agencies, and the board has no jurisdiction or control over the MassDEP.  Complete relief may be awarded without the MassDEP, and the MassDEP does not claim an interest in the action or seek to intervene.  See Mass. R. Civ. P. 19, 365 Mass. 765 (1974), and 801 Code Mass. Regs. § 1.01(9)(d) (permissive intervention for nonparties "likely to be substantially and specifically affected" by the proceeding).

[7] We are mindful of the fact that nearly fifteen years passed as Decoulos and the board litigated the complaints at issue here.  Although the board has stayed suspension of

10

arbitrary and capricious, Decoulos has not shown that he was prejudiced by that delay. Decoulos argues that the board should have established a statute of limitations and emphasizes that the administrative action has taken more than thirteen years to complete. Despite this significant delay, we may set aside or modify the board's decision only if "the substantial rights of any party may have been prejudiced" as a result. G. L. c. 30A, § 14 (7). Decoulos asserts that he was prejudiced because the delay compromised the memory of one witness, Mark Jablonski, about events at Site A in May 2003. However, Jablonski testified that he remembered the events in question and was able to answer numerous questions about them. Even if Jablonski's memory of details was not "exact," Decoulos has "point[ed] to nothing in the record" to show that the Jablonski's memory of the relevant events had deteriorated over time, nor, indeed, that Jablonski's testimony would have been material (and thus its absence prejudicial) had he remembered more. Fisch v. Board of Registration in Med., 437 Mass. 128, 133-134 (2002). Decoulos has not shown that substantial prejudice resulted from the delay as required by G. L. c. 30A, § 14 (7).

_____

Decoulos's license until the resolution of this appeal and Decoulos has continued to practice "minimally" during that time, nothing in our decision should be read to endorse the delay in this case.

11

Decoulos also argues that the lengthy time span of these proceedings denied him procedural due process under article 11 of the Massachusetts Declaration of Rights. As with G. L. c. 30A, § 14, "to prevail on his constitutional due process argument, [Decoulos] must show that the delay, which was clearly inordinate, was significantly prejudicial." Commonwealth v. Hudson, 404 Mass. 282, 285 (1989), citing Commonwealth v. Weichel, 403 Mass. 103, 109 (1988). Cf. Matter of McBride, 449 Mass. 154, 165-166 (2007) ("Mere delay in [attorney] disciplinary proceedings does not result in dismissal" without showing of prejudice). Decoulos has not shown such prejudice.[8]

Decoulos also argues that the board's decision was arbitrary and capricious because MassDEP failed to identify stormwater outfall contamination, made ineffective cleanup demands as compared to Decoulos's method, and wasted taxpayer funds with its methods. Whether Decoulos's science and cleanup methods were sound or even superior is not relevant to the challenged decision: at issue is the discipline imposed by the board -- not the MassDEP -- based on findings that Decoulos violated the MCP and LSP rules of professional conduct. We

---

[8] We also note that part of the delay was due to Decoulos's own requests for additional time to complete filings, and there is no evidence of deliberate delay by the board. See Hudson, 404 Mass. at 284-285; Camoscio v. Board of Registration in Podiatry, 394 Mass. 1006, 1006-1007 (1985).

12

recognize, however, that the MassDEP's decisions during the cleanups at Sites A and B undergirded the board's decision to discipline Decoulos. The board's findings that Decoulos did not comply with the MassDEP's guidance led to the disciplinary action now being challenged. Were we to construe Decoulos's qualms with the MassDEP decisions as arguments that the board's implicit approval of those decisions was not supported by substantial evidence, we would not be persuaded.[9]

The board rationally found that Decoulos failed to act with reasonable care and diligence at Site A in violation of 309 Code Mass. Regs. § 4.02(1), "because he did not perform sufficient assessment activities to rule out a connection between the diesel release and the contamination at the outfall or to support his assertions that surface runoff, and not the diesel release, caused the contamination at the outfall." The board also found that Decoulos did not follow the requirements and procedures in G. L. c. 21E, and the MCP because he failed to implement the MassDEP's requirements at Site A, including the

---

[9] "Substantial evidence" is defined as "such evidence that a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). A decision does not meet the substantial evidence requirement if "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109 (2014), citing Cobble v. Commissioner of the Dep't of Social Servs., 430 Mass. 385, 390-391 (1999).

13

requirement to conduct active LNAPL recovery, instead using a passive system to address the LNAPL contamination without the MassDEP's approval. The board concluded that this violated 309 Code Mass. Regs. § 4.03(3)(b).

In addition, at Site B, the board found that Decoulos did not meet the standard of care in violation of 309 Code Mass. Regs. § 4.02(1), because he submitted the RAO without demonstrating that a "level of [n]o [s]ignificant [r]isk existed" even as the data showed increasing levels of contaminants. It found that Decoulos used incorrect calculations and did not perform risk assessment consistent with the practices published by the MassDEP, in violation of the MCP. The board determined that these actions violated 309 Code Mass. Regs. § 4.03(3)(b). All of these findings are amply supported by evidence in the record, and it was within the board's discretion to use its technical competence and specialized knowledge to credit the MassDEP's scientific decisions and determine that Decoulos had violated both the MCP and the LSP rules of professional conduct. See G. L. c. 30A, § 14 (7); Arthurs v. Board of Registration in Med., 383 Mass. 299, 311 n.24 (1981).

3. Presiding officer. Finally, Decoulos argues that his hearing before the presiding officer violated article 29 of the Massachusetts Declaration of Rights because a board member who

14

testified against Decoulos was also part of the group that selected the presiding officer from the OADR.  Article 29 extends beyond judges to hearing officers, Police Comm'r of Boston v. Municipal Court of the W. Roxbury Dist., 368 Mass. 501, 507 (1975), but there is no evidence that Decoulos's right to a fair hearing was violated.  Nothing in the record shows that board member in question discussed Decoulos's case with the presiding officer, nor does Decoulos allege any impropriety in the selection process.  See Goldstein v. Board of Registration of Chiropractors, 426 Mass. 606, 615-616 (1998); Varga v. Board of Registration of Chiropractors, 411 Mass. 302, 306 (1991) (noting high bar for "alleged bias and interest" to violate article 29).  The only alleged occasions of bias were the presiding officer's decisions to deny the issuance of subpoenas to witnesses and to prevent Decoulos from obtaining evidence from the MassDEP.  We have already found that these decisions were made properly within the presiding officer's discretion. There was likewise nothing improper about the presiding officer's determination of credibility regarding the witnesses against Decoulos.  "It is for the [agency] to determine the credibility of the witnesses and to resolve factual disputes." D'Amour v. Board of Registration in Dentistry, 409 Mass. 572, 583 (1991), citing Cherubino v. Board of Registration of Chiropractors, 403 Mass. 350, 356 (1988).

Conclusion.  We affirm the Superior Court judgment denying the plaintiff's motion, and allowing the defendant's cross motion for judgment on the pleadings.

Judgment affirmed.

By the Court (Massing, Hand & Smyth, JJ.[10]),

Clerk

Entered:  November 13, 2024.

---

[10] The panelists are listed in order of seniority.